ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 OCT 25  AM 11: 20

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

GLENN MITCHELL FLORENCE,          )
                                  )
          Petitioner,             )
                                  )
     v.                           )     CV 104-096
                                  )     (Formerly CR 101-087)
UNITED STATES OF AMERICA,         )
                                  )
          Respondent.             )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Glenn Mitchell Florence ("Petitioner") filed the above-captioned case pursuant to 28 U.S.C. § 2255. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED,** that this civil action be **CLOSED,** and that a final judgment be **ENTERED** in favor of the United States of America ("the government").

### I. BACKGROUND

Petitioner and two co-defendants were named in a two-count, grand jury indictment returned on December 12, 2001. United States v. Florence, CR101-087 (S.D. Ga. Dec. 12, 2001), *hereinafter* "CR 101-087," doc. no. 3. Count One charged that beginning sometime in 1998, "and continuing through the date of the return of this indictment [December 12, 2001], Petitioner and his two co-defendants engaged in a conspiracy "to commit the crimes of possession with intent to distribute and distribution of more than 50 grams of

methamphetamine and more than 500 grams of a mixture containing a detectable amount of methamphetamine." Id. at 1-2.  Count Two charged that on October 25, 2001, Petitioner possessed with the intent to distribute more than five (5) grams of methamphetamine. Id. at 2.  Petitioner retained counsel, J. Pete Theodocion, to represent him.  CR 101-087, doc. no. 15.  With Mr. Theodocion's assistance, Petitioner entered into a negotiated plea agreement with the government whereby he agreed to plead guilty to Count One of the indictment.  CR 101-087, doc. no. 91.  In exchange for the guilty plea, the government agreed, *inter alia*, to dismiss the remaining count of the indictment and not object to Petitioner receiving an acceptance of responsibility reduction provided that Petitioner satisfied certain enumerated conditions.  Id. at 1-2.  The plea agreement explained that Petitioner understood "that the nature of the charge to which the plea is offered involves proof as to Count One of the Indictment. . . ."  Id. at 6.  Petitioner acknowledged in writing that he read and understood the plea agreement.  Id. at 10.  The Honorable Dudley H. Bowen, Jr., United States District Judge, accepted Petitioner's guilty plea on February 28, 2002.  CR 101-087, doc. no. 93.

After Petitioner pleaded guilty, a presentence investigation report ("PSI") was prepared.  The probation officer used the November 1, 2001, edition of the Guidelines Manual in preparing the report.  PSI ¶ 23.  Pursuant to the Federal Sentencing Guidelines ("the Guidelines"), the methamphetamine and actual methamphetamine involved in Petitioner's offense were converted to the equivalent amount of marihuana to establish to total amount of controlled substances involved; under that conversion calculation, the equivalent of 6,950 kilograms of marihuana was attributed to Petitioner, resulting in a base offense level of 34.  PSI ¶ 24.  Moreover, the Probation Officer recommended that

Petitioner's offense level be increased by six pursuant to USSG § 2D1.1(b)(5)(C), which called for a six-level increase when the offense at issue involved the manufacture of amphetamine or methamphetamine and created substantial risk of harm to the life of a minor or incompetent.[1]  PSI ¶ 25.  Because Petitioner tested positive for methamphetamine usage while on pretrial supervision, the Probation Officer also recommended that Petitioner not be given a three-level reduction for acceptance of responsibility as defined in USSG § 3E1.1.[2] PSI ¶¶ 22, 50.  On June 10, 2002, Judge Bowen adopted the factual statements in the PSI as his own findings of fact and, after hearing from counsel and Petitioner, sentenced Petitioner to 292 months of imprisonment, 5 years of supervised release, a $7,500 fine, and a $100 special assessment; the judgment was entered on the docket on June 12, 2002.  CR 101-087, doc. no. 118; doc. no. 125, Sent. Tr., pp. 53-54, 63, 71-72.

Petitioner filed an appeal.  However, the Eleventh Circuit Court of Appeals affirmed his conviction and sentence.  United States v. Florence, 333 F.3d 1290 (11th Cir. 2003). Petitioner did not seek review in the United States Supreme Court.

---

[1]This enhancement was based on a fire that occurred on July 14, 2001 in a Quality Inn hotel room when one of the persons with whom Petitioner had been manufacturing methamphetamine agreed to stay behind (after Petitioner left with finished product) to finish boiling off a product used in the methamphetamine manufacturing process.  PSI ¶ 10. According to the sentencing hearing testimony of the Quality Inn manager, there were several minors staying in the motel on July 14, 2001.  CR 101-087, doc. no. 125, Sent. Tr., pp. 11-12, 15; see also PSI ¶ 25.

[2]Petitioner submitted a positive urine screen for methamphetamine on December 17, 2001, the date of his arrest on the federal charges at issue in these proceedings.  PSI ¶ 50. The next positive test for methamphetamine use occurred on February 25, 2002, resulting in the revocation of Petitioner's bond following the entry of his guilty plea on February 28, 2002.  Id.

3

Petitioner then timely-filed the above-captioned § 2255 motion. He raises the following nine grounds for relief:

(1)     Application of Amendment 608 of the United States Sentencing Guidelines at sentencing violated the Due Process and Ex Post Facto Clauses of the United States Constitution.

(2)     Application of Amendment 620 of the United States Sentencing Guidelines at sentencing violated the Due Process and Ex Post Facto Clauses of the United States Constitution.

(3)     Trial and appellate counsel rendered ineffective assistance of counsel in failing to object to the invalid application of Amendments 608 and 620.

(4)     Appellate counsel rendered ineffective assistance of counsel by failing to pursue discretionary review in the United States Supreme Court where there was a circuit split of authority on the proper construction of Amendment 620, U.S.S.G. § 2D1.1(b)(5)(C), and Application Note 20(B) in defining whether a particular minor must be identified in order for the six-level enhancement of subsection (b)(5)(C) to apply.

(5)     Trial counsel rendered ineffective assistance of counsel at sentencing by failing to argue that the Government must prove that it was reasonably foreseeable to petitioner that his participation would constitute a substantial risk of harm to the life of a particular, identifiable minor.

(6)     U.S.S.G. § 2D1.1(b)(5)(C) is unconstitutional insofar as it permits a penalty increase in violation of the Sixth Amendment guarantee to a determination by a jury of any fact which increases a sentence.

(7)     Appellate counsel rendered ineffective assistance of counsel by failing to pursue discretionary review in the United States Supreme Court on the issue of the standard of proof required for applying sentencing enhancements.

(8)     The application of a sentencing enhancement by a judge, rather than a jury, using a preponderance of evidence standard of proof, is both structural error and a substantive violation of petitioner's Sixth Amendment rights.

4

(9)     The non-retroactivity doctrine of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), is unconstitutional, because it violates the principle of separation-of-powers as well as the provisions of Article III of the United States Constitution.

(Doc. nos. 1 & 3).[3]

## II. <u>ANALYSIS</u>

### A.     Procedural Bar on Issues Not Raised On Direct Appeal

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005)(*per curiam*)(citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills</u>, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*)(citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. <u>United States v. Peloso</u>, 824 F.2d 914, 915 (11th Cir. 1987).   Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. <u>Montemoino v. United States</u>, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).  However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).

---

[3]Petitioner amended his original § 2255 motion to add four claims to his original five. (Doc. nos. 1 & 3).

Therefore, other than an ineffective assistance of counsel claim, if a ground for relief was available on appeal, the district court may not consider the ground under § 2255 unless the petitioner can establish (1) cause for not raising the ground on appeal, and (2) actual prejudice resulting from the alleged error. United States v. Frady, 456 U.S. 152, 167-68 (1982); see also Montano, 398 F.3d at 1280. A showing that an attorney's performance was constitutionally deficient, coupled with a showing of prejudice, can satisfy the cause and prejudice standard and thereby excuse a procedural default. Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997). Alternatively, § 2255 review may be had under the "fundamental miscarriage of justice" exception, under which the extraordinary case must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 495-96 (1986); see also Montano, 398 F.3d at 1280.

Here, Petitioner made two arguments on direct appeal: (1) the district court erred in applying a six-level enhancement under USSG § 2D1.1(b)(5)(C) because the court did not identify a specific minor placed at substantial risk of harm, and (2) even if USSG § 2D1.1(b)(5)(C) was applicable, the district court should have required proof of supporting facts by a burden of proof higher than a preponderance of the evidence. Florence, 333 F.3d at 1292, 1294. Thus, as his first two claims concerning the application of Amendments 608 and 620 of the Guidelines were not raised on appeal, they should be barred from review under § 2255. However, as noted above, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro, 538 U.S. at 509. Petitioner has,

6

therefore, cloaked these otherwise procedurally barred issues under the auspices of an ineffective assistance of counsel claim.

**B.   Standards for Evaluating Performance of Counsel**

Although Petitioner's ineffective assistance of counsel claims are not barred for the reasons discussed above, Petitioner faces another procedural hurdle in this case. Specifically, claims that are raised and rejected on direct appeal are generally precluded from reconsideration in a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills, 36 F.3d at 1056; Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (per curiam). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[4] Nyhuis, 211 F.3d at 1343. That means that to the extent the factual bases underlying any of Petitioner's ineffective assistance claims were decided adversely to Petitioner on appeal, they will not be revisited here. Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

---

[4]Stated another way, simply putting a new name on an old issue will not suffice.

With these principles in mind, the Court turns its attention to the standards for evaluating the performance of Petitioner's retained counsel, Mr. Theodocion. To establish ineffective assistance of counsel, Petitioner must meet a two-part test. Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

8

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable - - is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

As to appellate counsel, the Court's analysis under Strickland is further guided by the principle that appellate counsel is not ineffective when he fails to raise a meritless argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Stated another way, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984). Neither does the Sixth Amendment require appellate advocates to raise every non-frivolous issue.

9

Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991). To succeed on his appellate counsel claims, Petitioner must show that counsel's performance was prejudicial in that it affected the outcome of the appeal. Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Davis v. Secretary for Dep't of Corrs., 341 F.3d 1310, 1316 (11th Cir. 2003) (*per curiam*) (same).

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, see Cross, 893 F.2d at 1290, the Court - bearing in mind all relevant prior rulings by the Eleventh Circuit - will review the merits of the claims which form the basis for Petitioner's claims of ineffective assistance of counsel.

1.    **Grounds 1-3: Application of Amendments 608 and 620**

According to Petitioner, Amendments 608 and 620 were improperly applied to his sentence because they were not validly enacted until, at the earliest, November 1, 2001; Petitioner contends that his offense occurred on July 14, 2001. Thus, goes the argument, enhancing his sentence under these provisions violated both the Due Process and Ex Post Facto Clauses of the United States Constitution, and his counsel was ineffective for not so arguing before the District Court and before the Eleventh Circuit Court of Appeals. (Doc. no. 1, Addendum, pp. 1-3).

Amendment 608, an emergency amendment to the Guidelines that took effect on December 16, 2000, created USSG § 2D1.1(b)(6)(B). The amendment called for an enhancement of 6 offense levels above the applicable level at the time of enactment or a level of not less than 30 if, *inter alia*, the offense [under the Methamphetamine and Club Drug Anti-Proliferation Act of 2000, Pub. L. 106-310] created a substantial risk of harm to the life

of a minor.  USSG, Supp. to App. C, Amend. 608 (Dec. 16, 2000).  The Sentencing

Commission provided four factors that a court could consider in determining whether a

substantial risk of harm existed within the meaning of the new Guidelines provision,

including the quantity of chemical or hazardous material found at the laboratory or the

manner in which these items were stored; the manner in which hazardous materials were

disposed or their likely release into the environment; the duration of offense or extent of the

manufacturing operation; and, the location of the amphetamine or methamphetamine

laboratory and the number of human lives placed at substantial risk of harm.  Id.

The Sentencing Commission then created Amendment 620, a permanent amendment

to § 2D1.1(b)(6), effective November 1, 2001.  USSG Supp. to App. C, Amend. 620 (Nov.

1, 2001) ("This amendment repromulgates the emergency amendment [608], with

modifications, as a permanent amendment.").  Under this Amendment, the substance of the

former § 2D1.1(b)(6)(B) was placed in § 2D1.1(b)(5)(C), and it became mandatory for the

courts to consider the four factors described above.  Therefore, as of November 1, 2001,

USSG § 2D1.1(b)(5)(C), which was applied to Petitioner's sentencing calculation (PSI ¶ 25),

provided: "If the offense (i) involved the manufacture of amphetamine or methamphetamine;

and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase

by 6 levels.  If the resulting offense level is less than level 30, increase to level 30."

The Court recognizes that Petitioner goes into some detail about the promulgation

of Amendment 608 and contends that his due process rights were violated by its application.

(Doc. no. 8, pp. 5-7).  However, his argument on this point is somewhat confusing in that

later in his reply briefing, Petitioner takes pains to argue that he was sentenced not under

USSG § 2D1.1(b)(6)(B) - the provision promulgated under emergency Amendment 608 - but rather was sentenced under USSG § 2D1.1(b)(5)(C), which was promulgated pursuant to Amendment 620. (Id. at 10). Thus, whether Amendment 608 was validly promulgated does not appear to have any direct relevance to Petitioner's case, particularly in light of the fact that the PSI specifically acknowledged use of the November 1, 2001 edition of the Guidelines Manual. Stated otherwise, the PSI was prepared based on the version of the Guidelines that used § 2D1.1(b)(5)(C), which arose (as described above) from the re-promulgation of Amendment 608. There is no argument that Amendment 620 was not validly promulgated and effective as of November 1, 2001. Accordingly, as Petitioner has not shown that he was affected, let alone prejudiced, by an Amendment that, as originally written, was not applied to his case, the Court need not make a decision about whether Amendment 608 was validly promulgated.

Rather, the real question is whether Petitioner was properly sentenced under the version of the Guidelines in effect on November 1, 2001. Generally, the Guidelines in effect at the time of sentencing (here, June 10, 2002) are to be applied to a defendant's sentence. See, e.g., United States v. Simmons, 368 F.3d 1335, 1337 (11th Cir. 2004). Importantly, however, if the Guidelines in effect at the time of sentencing would result in a sentence more harsh than one imposed under the Guidelines in effect when a defendant committed his offense, the version of the Guidelines in effect at the time of commission of the offense should be used to avoid an ex post facto problem. Id. Here, Petitioner argues that his offense occurred on July 14, 2001 (doc. no.1, Addendum, p. 2), and therefore it was improper to use Guidelines that became effective on November 1, 2001 to impose a harsher sentence.

The fallacy in Petitioner's argument lies in the fact that he pleaded guilty to Count One of the indictment. That Count charged Petitioner not simply with criminal acts that resulted in a fire in a motel room on July 14, 2001, but rather charged him with a conspiracy to distribute and to possess with intent to distribute methamphetamine that began in 1998 and continued through the date of the return of the indictment, December 12, 2001. CR 101-087, doc. no. 3. Indeed, a search warrant executed at Petitioner's house on October 25, 2001 revealed, *inter alia*, a meth lab, along with actual methamphetamine, and materials and equipment to manufacture and use methamphetamine. PSI ¶ 12. Moreover, Petitioner tested positive for methamphetamine at the time of his arrest on federal charges on December 17, 2001 and again on February 25, 2002.[5] PSI ¶ 50.

In the end, Petitioner's validly entered guilty plea conclusively establishes that Petitioner participated in a conspiracy that concluded after the November 1, 2001 effective date of the Guidelines that was used in his case.[6,7] McCarthy v. United States, 394 U.S. 459, 466 (1969) ("[A] guilty plea is an admission of all the elements of a formal criminal charge. . . . "); see also United States v. Marks, 38 F.3d 1009, 1016 (8th Cir. 1994) (finding that a

---

[5] According to the Sentencing Transcript, law enforcement agents did not find all of the drugs that Petitioner had sequestered at his house when they conducted their search on October 25, 2001, and this allowed Petitioner continued access to methamphetamine. Sent. Tr., p. 61.

[6] Petitioner does not contest the knowing and voluntary nature of his guilty plea.

[7] The cases upon which Petitioner relies at pages 7 through 9 of his reply briefing to argue that the date listed in an indictment does not govern the date on which a crime concluded are inapposite in that his cited cases do not involve guilty pleas, they involve jury trials. See, e.g., United States v. Peeples, 23 F.3d 370 (11th Cir. 1994); United States v. Nash, 115 F.3d 1431, 1441 (9th Cir. 1997). Here, Petitioner's validly entered guilty plea establishes that the conspiracy continued through the date of the return of the indictment, December 12, 2001.

defendant's guilty plea to a conspiracy that straddled the effective date of a statute imposing a mandatory life sentence established that conspiracy, and defendant's participation therein, continued after effective date of statute - even when no evidence was presented at sentencing that a criminal transaction covered by the relevant statute occurred after the effective date). In conspiracy cases, the Guidelines in effect on the completion date of the offense determines which Guidelines version is applicable. United States v. Bailey, 123 F.3d 1381, 1406 (11th Cir. 1997). Thus, as there was no error in the use of the November 1, 2001 version of the Guidelines, Petitioner can show no prejudice from Mr. Theodocion's failure (at the trial or appellate level)[8] to raise these issues about Amendments 608 and 620 that Petitioner now presses. Thus, Petitioner has not met his burden under Strickland, *supra*, to show ineffective assistance of counsel, and he is not entitled to relief based on Grounds 1 through 3 of the § 2255 motion.

### 2. Ground 4: Pursuit of Discretionary Review

In Ground 4 of the § 2255 motion, Petitioner alleges that he received ineffective assistance of counsel because Mr. Theodocion failed to pursue discretionary review in the United States Supreme Court when there was a circuit split of authority concerning whether a particular minor must be identified in order for the six-level enhancement under § 2D1.1(b)(5)(C) to apply.

---

[8]Petitioner acknowledged in his reply briefing (doc. no. 8, p. 18) that Mr. Theodocion had raised the issue at sentencing about the November 1st effective date for the applicable Guidelines as it related to the dates of conduct alleged in the indictment. Sent. Tr., pp. 48-49.

As Petitioner recognizes in his statement of these two claims, review by the Supreme Court is discretionary, and a defendant does not have a constitutional right to counsel to pursue such discretionary review. Ross v. Moffitt, 417 U.S. 600, 616-17 (1974). Moreover, a defendant cannot be deprived of effective assistance of counsel where there is no constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (*per curiam*). Thus, from the face of the § 2255 motion, it appears that Petitioner is not entitled to relief on his claim concerning the performance of his counsel in discretionary appellate proceedings.[9]

However, Petitioner suggests that his claims are more "precise" than the general principles set forth above. (Doc. no. 8, pp. 12-18). According to Petitioner, Mr. Theodocion should have pursued discretionary review because on the same day that the Eleventh Circuit ruled in his appeal that § 2D1.1(b)(5)(C) did not require the district court to identify a specific minor at risk, the Fifth Circuit ruled that the six-level enhancement should not have been applied where there was "a dearth of evidence to support the conclusion that [the

---

[9]Petitioner makes much of his allegation that Mr. Theodocion did not promptly inform him when the Eleventh Circuit affirmed his sentence. (Doc. no. 8, Florence Aff., Ex. A). Notably absent from Petitioner's affidavit, however, is any indication that he made an effort himself to ascertain the status of appeal during the approximately one-year period that his appeal had been pending at the Eleventh Circuit. Moreover, the very tenor of the letter cuts against the implied assertion that Mr. Theodocion had simply dropped contact with Petitioner about his case. That is, Mr. Theodocion distinguished issues in Petitioner's case from those in another, specifically named prisoner's case and stated - without any prior mention in the letter - that Mr. Theodocion would soon be sending "a copy of that sentencing transcript." (Id. at Ex. 1). Regardless of the timing of Mr. Theodocion's notice to Petitioner about the status of his appeal, as discussed above, Petitioner was not entitled to counsel to pursue discretionary review, and Petitioner has not established that even if further discretionary review had been timely undertaken, the results of the appellate proceedings would have been different. Thus, the issue of the timing of Mr. Theodocion's notice to Petitioner about the disposition of his appeal cannot form the basis for relief in this proceeding.

defendant] could have reasonably foreseen that his participation would endanger the life of a particular minor." Cf. Florence, 333 F.3d at 1293-94 with United States v. Simpson, 334 F.3d 453, 458 (5th Cir. 2003). Petitioner argues that because one of the criteria utilized by the Supreme Court in determining whether to review a case is a split in circuit decisions, his case was a prime candidate for certiorari review. (Doc. no. 1, Addendum, pp. 5-7). Thus, goes the argument, "[i]t is very likely that the Supreme Court would have granted review" in Petitioner's case." (Id. at 7). Petitioner's optimistic view of his chances of the Supreme Court hearing his case is based on sheer speculation and does not entitle him to relief.

First, it is not at all clear that the rulings in Florence and Simpson were at odds. As a recent Fifth Circuit case explained when favorably citing Florence for the proposition that a specific minor need not necessarily be identified to apply § 2D1.1(b)(5)(C), the Simpson court noted the general risks of operating a methamphetamine laboratory, but it was concerned that it was not reasonably foreseeable that a minor would be present where the defendant was operating his laboratory.[10] United States v. Reasoner, No. 03-10601, 2004 WL 1328096, at * 7 (5th Cir. June 14, 2004) (per curiam). After reviewing the facts of Florence, the Reasoner court concluded that the application of the six-level enhancement was proper not only because there was a specific risk of harm to two identifiable children, but also because of "a general risk of harm to the minor children in the apartment complex."

---

[10]The sole basis for applying the enhancement in Simpson was the supposed presence of a co-defendant's infant child that was later determined not to have been born at the time that the defendant to whom the enhancement had been applied was participating in the charged conspiracy. Simpson, 334 F.3d at 457. Thus, unlike Petitioner's case where there was evidence presented about several minors in the hotel where the fire occurred, in Simpson, the sentencing court had relied on the presence of one child who turned out not to have been present when the defendant participated in the conspiracy.

Id. at * 8. In addition, subsequent challenges to sentencing enhancements under §

2D1.1(b)(5)(C) in the Eleventh Circuit continue to be considered in light of the standard set

forth in Florence, indicating that the Eleventh Circuit has not changed its analysis since

Petitioner's case, regardless of what other circuits may or may not have interpreted the

enhancement to require.[11] See United States v. Rodriguez, No. 04-14113, 140 Fed. Appx.

45, 46 n.2 (11th Cir. June 10, 2005).

Thus, Petitioner's optimism about his chances for discretionary review and his

creative attempt to analogize the standard of effective performance for an attorney

representing a federal prisoner as requiring pursuit of discretionary review with the

requirement that state prisoners seek discretionary review of their claims in order exhaust the

claims for federal review under the Antiterrorism and Effective Death Penalty Act of 1996

(doc. no. 8, pp. 13-14) does not change the end result in this case. Petitioner has not

established that he was entitled to counsel to pursue discretionary review, let alone that the

outcome of his appellate proceedings would have been different if Mr. Theodocion had

---

[11]Notably, the cases upon which Petitioner relies to support his contention that under certain circumstances, an attorney must persevere with discretionary appeals can be distinguished because the defendants in those cases had strong viable claims that had already been identified as areas of unsettled law, with conflicting decisions, within the jurisdiction that would govern the defendant's claims. See, e.g., Perez v. Department of Corrs., 227 F.Supp. 2d 1298, 1305-08 (S.D. Fla. 2002) (finding that counsel acted in objectively unreasonable manner in not making appellate court aware, despite counsel's actual knowledge, that very issues on appeal were being re-examined by the state supreme court and had been certified to state supreme court as issues of "great public importance" by two lower level appellate courts). There was no such conflicting precedent in Petitioner's case, as indeed the Eleventh Circuit acknowledged that its decision on the application of the six-level enhancement was an issue of first impression. Florence, 333 F.3d at 1291.

pursued further discretionary review. Therefore, Petitioner has not met the Strickland standard, *supra*, and he is not entitled to relief based on this claim.

### 3.    Ground 5: Reasonably Foreseeable Harm to Particular, Identifiable Minor

In Ground 5 of the § 2255 motion, Petitioner contends that Mr. Theodocion rendered ineffective assistance of counsel because he failed to hold the government to its burden of proof at sentencing that it was reasonably foreseeable to Petitioner that his criminal activities posed a substantial risk of harm to the life of a particular, identifiable minor. However, as the government correctly points out (doc. no. 5, pp. 5-6), the underlying basis for this ineffective assistance of counsel claim was already raised and rejected on direct appeal. As set forth in Part II.B, *supra*, claims that have already been adversely decided on direct appeal cannot be re-litigated in collateral proceedings. Although, as Petitioner correctly points out (doc. no. 8, p. 4), he did not raise an ineffective assistance of counsel claim on appeal, he did raise the issues underlying this claim. As the Eleventh Circuit has already determined that there was no error in the application of the six-level enhancement or the burden of proof by which the government established the facts supporting the enhancement, Florence, 333 F.3d at 1293-94, Petitioner cannot establish the requisite prejudice under Strickland, *supra*, to obtain relief on this claim.

## C.    Sixth Amendment Right to Have Jury Determine Facts which Increase Sentence

The genesis of Petitioner's remaining claims in Grounds 6, 7, 8 and 9 of the § 2255 motion can be found in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). In Blakely, the Supreme Court revisited the rule of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) - which held that "[o]ther than the fact of a prior conviction, any fact that increases

18

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" - to determine that a sentence that was enhanced under the State of Washington's sentencing guidelines based on facts found by the sentencing judge and not the jury violated the defendant's Sixth Amendment rights. See Blakely, 124 S. Ct. at 2538. This principle was applied to the federal Sentencing Guidelines in Booker v. United States, 543 U.S.–, 125 S. Ct. 738 (2005). In Grounds 6 and 8 of the § 2255 motion, Petitioner argues that the application of a sentencing enhancement - including the one applied in his case (§ 2D1.1(b)(5)(C)) - based on facts determined by a judge under a preponderance of the evidence standard rather than by a jury under a beyond a reasonable doubt standard violates the Sixth Amendment. Ground 7 contends that Petitioner received ineffective assistance of counsel because Mr. Theodocion did not make this argument on appeal. Apparently sensing that a change was coming after Blakely but uncertain whether the principles of Blakely would be applied to the Federal Sentencing Guidelines such that he would obtain the benefit of a potential change in the law,[12] Petitioner argues in Ground 9 that the non-retroactivity doctrine of Teague v. Lane, 489 U.S. 288 (1989) is unconstitutional.[13]

---

[12]Blakely was decided on June 24, 2004. Not until the issuance of the Booker decision on January 12, 2005 was the rationale from Blakely specifically applied to the Federal Sentencing Guidelines. The briefing in this case was completed before January 12, 2005.

[13]The Teague doctrine bars retroactive application in a § 2255 proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions. Teague, 489 U.S. at 310-13. A new rule should be applied retroactively only if it (1) places "certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) requires the observance of "those procedures that . . . are implicit in the concept of ordered liberty." Id. at 311 (citations omitted). This second exception is reserved

Grounds 6 and 8 cannot form the basis for relief in these proceedings because the Eleventh Circuit has ruled that a sentence imposed pursuant to the Guidelines - guidelines that the Supreme Court has now ruled to be incompatible with the Sixth Amendment in light of their mandatory application - cannot be challenged under the principles of Blakely/ Booker, *supra*, in collateral proceedings.[14] Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (*per curiam*). The Eleventh Circuit reached its decision in Varela after specifically considering whether a Blakely (and eventually Booker) claim was barred by the non-retroactivity doctrine of Teague. Id. at 867. Although Petitioner invites this Court to declare the Teague doctrine unconstitutional (doc. no. 8, p. 23 n.9), it is notable that all of the case law he cites in support of his position consists of Supreme Court opinions discussing prior Supreme Court jurisprudence. (Id. at 21-26). There is nothing to suggest a basis for this Court - in the face of repeated application of the Teague doctrine by the United States Supreme Court and specific consideration of the doctrine by the Eleventh Circuit in Varela, *supra* - to declare that the doctrine is unconstitutional. Thus, Ground 9 of motion cannot form the basis for relief in these proceedings.

Thus, Petitioner is left only with his claim in Ground 7 that he received ineffective assistance of appellate counsel because Mr. Theodocion failed to pursue discretionary review in the Supreme Court on the issue of the standard of proof required for applying sentencing

---

for "watershed rules of criminal procedure" that "implicate the fundamental fairness of a trial." Id. at 311, 312. Thus, Petitioner is apparently trying to "head off at the pass" any ruling that might recognize a Sixth Amendment violation but refuse to apply it to his case. As discussed in detail above, Petitioner's pre-emptive strike fails.

[14]There is no dispute that Petitioner's conviction became final in 2003, well in advance of the Blakely decision on June 24, 2004 or the Booker decision on January 12, 2005.

enhancements.[15] As discussed in detail in Part II.B.2 above, a defendant does not have a right to counsel to pursue discretionary review and a defendant cannot be deprived of effective assistance of counsel where there is no constitutional right to counsel. See Wainwright, 455 U.S. at 587-88 . Moreover, at the time Petitioner was sentenced, the rule in the Eleventh Circuit was that Apprendi did not apply to the consideration of relevant conduct under the Sentencing Guidelines. United States v. Harris, 244 F.3d 828, 830 (11th Cir. 2001). "Because Apprendi only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the guideline range to shift within the statutory range." United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001) (en banc).[16]   The relevant conduct considered by Judge Bowen did not increase Petitioner's penalty beyond the statutory range of ten years to life that petition faced on Count One of the indictment. See CR 101-087, doc. no. 4. Additionally, the Blakely and Booker decisions were not handed down until after Petitioner's conviction and sentence became final. Thus, Petitioner has not established that counsel acted in an objectively unreasonable manner as required under Strickland, *supra*, when he failed to raise the Sixth Amendment claim now advanced by Petitioner that went against prevailing Circuit precedent

---

[15]Petitioner alternates on this point between an argument on the burden of proof for applying a sentencing enhancement and an argument whether a judge can make any factual determinations that affect sentencing. (Doc. no. 3, p. 3 ¶ 2). To the extent the argument is based on the burden of proof for applying a sentencing enhancement, that issue was raised and rejected on appeal, Florence, 333 F.3d at 1294, and as discussed in detail above cannot be re-litigated in these collateral proceedings. As the Eleventh Circuit rejected the claim, Petitioner can show no prejudice from Mr. Theodocion's appellate actions with respect to this claim.

[16]Of course, this analysis changed in the wake of the Supreme Court's ruling in Booker, 125 S. Ct. 738.

at the time of sentencing or when counsel failed to correctly hypothesize that this argument might be worthy of further discretionary appeal. Accord United States v. Claiborne, -F.Supp.2d-, No. CRIM 3:00CR383, 2005 WL 2230260, at *5 (E.D. Va. Aug. 10, 2005) (denying § 2255 relief on ineffective assistance of counsel claim where "counsel followed the controlling circuit law at that time [of sentencing] and failed to anticipate the rule announced in Booker.")

In sum, none of the grounds for relief which are based on the principles of Booker, *supra*, or the non-applicability of those principles on collateral review, can form the basis for relief in these proceedings.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED,** that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the government.

SO REPORTED and RECOMMENDED this 26th day of October, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

22